UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

TYRICE C. ADAMS *et al.*                                    PLAINTIFFS

v.                                    CIVIL ACTION NO. 3:16-CV-P29-CRS

HARDIN COUNTY DETENTION CENTER *et al.*                     DEFENDANTS

<u>MEMORANDUM OPINION</u>

This is a civil rights action brought by seven inmates pursuant to 42 U.S.C. § 1983.[1]  The

Court has granted these seven *pro se* Plaintiffs leave to proceed *in forma pauperis*.  This matter

is before the Court for screening pursuant to 28 U.S.C. § 1915A and *McGore v. Wrigglesworth*,

114 F.3d 601 (6th Cir. 1997), *overruled on other grounds by Jones v. Bock*, 594 U.S. 199 (2007).

For the reasons set forth below, the action will be dismissed.

### I.  SUMMARY OF COMPLAINT

Plaintiffs Tyrice C. Adams, Aaron Michael House, Eugene Hunt, Kyle Burgess, Michael

King, Gregory Wingfield, and Matthew Hooks[2] bring this action against Hardin County

Detention Center (HCDC), "HCDC Executives and Administration," and eleven named HCDC

officials in both their individual and official capacities.  The eleven named officials are Jailer

Danny Allen, Captain Walt Hinote, Corporal S. Noe, Lieutenant Robert S. Reynolds, Lawson

Louis, Sergeant C. Templeman, FTO Mike Gunter, Mrs. Martin, Mrs. Underwood, Lieutenant J.

Perry, and Sergeant Major Spearman.

---

[1] Six Plaintiffs are pretrial detainees and one Plaintiff is a convicted prisoner.
[2] Two other inmates also signed the complaint (DN 1) and amended complaint (DN 9), but they were dismissed from this action by the Court's Memorandum and Order (DN 26) entered on May 2, 2016, for failing to comply with the Court's Order to file an individual application to proceed without prepayment of fees.

Plaintiffs' claims relate to their conditions of confinement at HCDC.[3]  As relief, Plaintiffs seek monetary and punitive damages.  Some Plaintiffs also request injunctive relief in the form of release from prison, shorter sentences, release on parole, and expungement of their records.

## II. LEGAL STANDARD

Because Plaintiffs are inmates seeking relief against governmental entities, officers, and/or employees, this Court must review the instant action under 28 U.S.C. § 1915A.  Under § 1915A, the trial court must review the complaint and dismiss the complaint, or any portion of the complaint, if the court determines that it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.  *See* § 1915A(b)(1), (2); *McGore v. Wrigglesworth*, 114 F.3d at 608.

A claim is legally frivolous when it lacks an arguable basis either in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).  The trial court may, therefore, dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless.  *Id.* at 327.  In order to survive dismissal for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

"[A] district court must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true."  *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009)

---

[3] The Court notes that the Eighth Amendment's protections against cruel and unusual punishment extend to pretrial detainees through the Fourteenth Amendment's Due Process Clause and, thus, claims by pretrial detainees and convicted prisoners challenging conditions of confinement are both generally analyzed under the Eighth Amendment.  *Brodak v. Nichols*, No. 97-1688, 1998 U.S. App. LEXIS 20535 (6th Cir. 1998).

(citations omitted)).  "[A] *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers."  *Erickson v. Pardus*, 551 U.S. 89 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).  However, while liberal, this standard of review does require more than the bare assertion of legal conclusions.  *See Columbia Natural Res., Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995).  The court's duty "does not require [it] to conjure up unpled allegations," *McDonald v. Hall*, 610 F.2d 16, 19 (1st Cir. 1979), or to create a claim for a plaintiff.  *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975).  To command otherwise would require the court "to explore exhaustively all potential claims of a *pro se* plaintiff, [and] would also transform the district court from its legitimate advisory role to the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party."  *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

## III. ANALYSIS

### A.  42 U.S.C. § 1983 CLAIMS

"Section 1983 creates no substantive rights, but merely provides remedies for deprivations of rights established elsewhere."  *Flint ex rel. Flint v. Ky. Dep't of Corr.*, 270 F.3d 340, 351 (6th Cir. 2001).  Two elements are required to state a claim under § 1983.  *Gomez v. Toledo*, 446 U.S. 635 (1980).  "[A] plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law."  *West v. Atkins*, 487 U.S. 42, 48, 108 S. Ct. 2250, 101 L. Ed. 2d 40 (1988).  "Absent either element, a section 1983 claim will not lie." *Christy v. Randlett*, 932 F.2d 502, 504 (6th Cir. 1991).  As more fully explained below, the Court

finds that Plaintiffs have failed to allege any constitutional violation, and therefore it need not consider whether Defendants were acting under the color of state law.

### 1.   CHARGE FOR ROOM AND BOARD AND OTHER SERVICES

Plaintiffs first complain that they are being charged $30 per day for room and board and that Defendants deduct half of any funds deposited into their commissary accounts to cover this and other fees.  Plaintiff Hooks also alleges that HCDC charges for all forms of communication, including at-home visitation, phone calls, emails, voicemail, papers, pens, envelopes, and stamps, and also charges for transportation, medical service, commissary, and hygiene products.

Courts have generally held that charging inmates for room and board to defray costs of incarceration fails to state an actionable constitutional claim under the Eighth Amendment Excessive Fines Clause or the Fourteenth Amendment Due Process Clause.  *See Harper v. Oldham Cty. Jail,* No. 11-5517, 2011 U.S. App. LEXIS 26511 (6th Cir. Dec. 15, 2011) (holding no constitutional violation where jail deducted $ 30 per diem from plaintiffs' canteen account); *Sickles v. Campbell Cty.*, 501 F.3d 726 (6th Cir. 2007) (holding no constitutional violation where county jails charged all inmates, including pretrial detainees, up to $20 per day for room and board and withheld up to one quarter of funds in inmate's canteen accounts to cover the fees); *see also Slade v. Hampton Rd. Reg'l Jail*, 407 F.3d 243, 251-53 (4th Cir. 2005) (finding no actionable procedural due process claim for charging pretrial detainee room and board fee); *Jones v. Clark Cty.,* No. 5:15-cv-350-JMH, 2016 U.S. Dist. LEXIS 31976 (E.D. Ky. Mar. 11, 2016) (following the Sixth Circuit's holding in *Harper* and noting that the Sixth Circuit makes no distinction between pretrial detainees and convicted prisoners regarding jail fees); *Waters v. Bass*, 304 F. Supp. 2d 802, 807-08 (E.D. Va. 2004) (the imposition of a room and board fee amounts to neither cruel nor unusual punishment under the Eighth Amendment).

4

With regard to commissary prices, Plaintiffs have no federal constitutional right to purchase items (food or non-food) from a commissary at all. *See Tokar v. Armontrout*, 97 F.3d 1078, 1083 (8th Cir. 1996) (indicating that "we know of no constitutional right of access to a prison gift or snack shop"); *Hopkins v. Keefe Commissary Networks Sales*, No. 07-745, 2007 U.S. Dist. LEXIS 99140, at *10 (W.D. Pa. 2007) ("Inmates have no federal constitutional right to be able to purchase items from a commissary."); *Torres v. Droun*, No. 3:01CV1844 (DJS)(TPS), 2004 U.S. Dist. LEXIS 5483, at *22 (D. Conn. Mar. 30, 2004) ("The plaintiff has no constitutional right to purchase items from the commissary or outside vendors,"); *Bagwell v. Brewington-Carr,* No. 97-714-GMS, 2000 U.S. Dist. LEXIS 21413, at *11 (D. Del. Aug. 25, 2000) ( "Incarcerated [plaintiff] does not have a constitutional right to purchase potato chips and soda pop.")  In addition, because Plaintiffs do not have a federal constitutional right to purchase commissary items, they have no right to purchase commissary items at a particular price or to have Defendants restrained from charging exorbitant prices. *McCall v. Keefe Supply Co.*, 71 F. App'x 779, 780 (10th Cir. 2003) (stating that an inmate's claim that prison commissary charged "outrageous" prices for goods purchased through the prison commissary failed to state a constitutional claim); *French v. Butterworth*, 614 F.2d 23, 25 (1st Cir. 1980) (no legal basis exists for a demand that inmates be offered items for purchase at or near cost); *Griffin v. Doe*, No. 1:10CV1987, 2011 U.S. Dist. LEXIS 2618, at *3 (N.D. Ohio Jan.1 1, 2011) (prisoners have no constitutional right to purchase products at the same price as charged in retail stores).

With regard to the allegations that HCDC charges for medical care, a violation of the Eighth Amendment only occurs if the prison or jail conditions the right to receive necessary care or necessities on the payment of such fees. *See Reynolds v. Wagner*, 128 F.3d 166, 173-174 (3d Cir. 1997); *White v. Corr. Med. Servs.*, 94 F. App'x 262, 264 (6th Cir. 2004) ("It is constitutional

to charge inmates a small fee for health care where indigent inmates are guaranteed service regardless of ability to pay."). In this case, Plaintiffs do not allege that they were denied medical care or necessities for failure to pay any fee; they merely allege that they were charged fees. For this reason, Plaintiffs fail to state a constitutional claim.

Plaintiffs also complain that they are charged for all forms of communication, including at-home visitation, phone calls, emails, and voicemail. In *Terry v. Calhoun Cty. Corr. Facility*, a district court construed a claim regarding exorbitant charges for phone calls as a claim arising under the First Amendment. No. 1:12-cv-347, 2012 U.S. Dist. LEXIS 150514 (S.D. Mich. Oct. 19, 2012). The court noted as follows:

> Federal courts, including this Court, have consistently rejected First Amendment claims challenging high telephone rates on grounds that prisoners are not entitled to a specific rate for telephone calls and that prisoners failed to allege that the rates were so exorbitant as to deprive them of telephone access altogether. *See, e.g., Johnson v. California*, 207 F.3d 650, 656 (9th Cir. 2000) ("There is no authority for the proposition that prisoners are entitled to a specific rate for their telephone calls and the complaint alleges no facts from which one could conclude that the rate charged is so exorbitant as to deprive prisoners of phone access altogether."); *Semler v. Ludeman*, No. 09-0732, 2009 U.S. Dist. LEXIS 122567, 2010 WL 145275, at *15 (D. Minn. Jan. 8, 2010) (dismissing a claim that telephone rates were expensive because involuntarily committed sex offenders "do not have a First Amendment right to a specific rate for their telephone calls," and the plaintiffs "made no allegation that they are precluded from making telephone calls given the rate charged"); . . . *Riley v. Doyle*, No. 06-C-574-C, 2006 U.S. Dist. LEXIS 75526, 2006 WL 2947453, at *4 (W.D. Wis. Oct. 16, 2006) ("[T]elephone rates charged to institutionalized persons do not implicate the First Amendment no matter how exorbitant they may be.").

Id. at *8-9. Here, because Plaintiffs have not alleged that they were unable to make telephone calls or otherwise communicate with their family and friends due to exorbitant rates, the Court concludes that Plaintiffs have failed to state a claim under the First Amendment.

For these reasons, the Court concludes that Plaintiffs have failed to state a constitutional claim related to the fees HCDC charges for various services.

## 2.   FAILURE TO PROVIDE COPIES OF INMATES' TRUST ACCOUNT STATEMENTS

Plaintiffs also complain that they were denied access to their individual inmate trust account statements "to show proof of our 'indigency' to the courts so that we can proceed without prepayment of fees."  The law is clear that prisoners have a First Amendment right of access to the courts and that states have "affirmative obligations to assure all prisoners meaningful access to the courts."  *Bounds v. Smith*, 430 U.S. 817, 821 (1977).  Indeed, the Sixth Circuit has held that "[c]onsistent with their other affirmative obligations, prisons have an obligation to timely mail court documents when prisoners have been diligent and punctual in submitting them to prison officials."  *Dorn v. Lafler*, 601 F.3d 439, 444 (6th Cir. 2010).  However, prison officials may only be held liable for the deprivation of this First Amendment right to the extent that his or her actions prevented a prisoner from pursuing, or caused the rejection of, a specific criminal defense, non-frivolous direct appeal, habeas corpus application, or civil rights action.  *Lewis v. Casey*, 518 U.S. 343, 351 (1996)*; Hadix v. Johnson*, 182 F.3d 400, 405 (6th Cir. 1999).  Here, Plaintiffs have failed to make any showing that they were denied access to the Court as a result of HCDC's failure to provide them with copies of their inmate trust account statements.  Although it is clear from the record that HCDC did fail to provide Plaintiffs with these statements upon their initial requests for such, their applications to proceed *in forma pauperis* were ultimately completed and certified by HCDC officials, and the Court granted Plaintiffs leave to proceed *in forma pauperis* based upon such.  Thus, because Plaintiffs have not suffered any actual injury in regard to their prison trust account statements and their access to the courts, this claim will be dismissed.

### 3. CLASSIFICATION/SEGREGATION

Plaintiffs also state that they have been classified and "segregated" to the sex offenders' dorm even though they are either pretrial detainees or convicted prisoners who have only been convicted of misdemeanor misconduct charges "which by state and federal law don't even require you to register." Plaintiffs state that this form of classification is "excessive and oppressive" and that they want to challenge their classification for "persecution, oppression, excessive force, malicious prosecution, and being in violation of the double-jeopardy clause." Plaintiffs complain that due to their classification, they cannot "go out and work, have job-search, school release, or any other court ordered release that'll generate the capital for us to pay room and board."

The law is clear that inmates have no constitutional right under the Due Process Clause of the Fourteenth Amendment to be incarcerated in any particular institution, a particular part of an institution, or a particular security classification, unless the state has created a liberty interest in remaining at a particular institution. *See Olim v. Wakinekona*, 461 U.S. 238, 245-48 (1983); *Montanye v. Haymes*, 427 U.S. 236, 242 (1976); *Meachum v. Fano*, 427 U.S. 215, 223-229 (1976); *Beard v. Livesay*, 798 F.2d 874, 876 (6th Cir. 1986). This is not the case in Kentucky, where classification, segregation, and transfer of prisoners are within the discretion of the corrections department. K.R.S. § 197.065. *See also Sandin v. Conner*, 515 U.S. 472, 484-87 (1995) (confinement in particular part of prison or jail does not implicate due process absent "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life").

In addition, to the extent that Plaintiffs are alleging a violation of the Eighth Amendment's Cruel and Unusual Punishments Clause with regard to their classification, their

claim also fails.  "Not every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir. 1987).  "[H]arsh 'conditions of confinement' may constitute cruel and unusual punishment unless such conditions 'are part of the penalty that criminal offenders pay for their offenses against society.'"  *Whitley v. Albers*, 475 U.S. 312, 319 (1986) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)).  The alleged conduct must reflect an "unnecessary and wanton infliction of pain" to fall within the ambit of conduct proscribed by the Eighth Amendment. *Ingraham v. Wright*, 430 U.S. 651, 670 (1977) (quoting *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)).  "'Because placement in segregation is a routine discomfort that is a part of the penalty that criminal offenders pay for their offenses against society, it is insufficient to support an Eighth Amendment Claim.'"  *Harden-Bey v. Rutter*, 524 F.3d 789, 795 (6th Cir. 2008) (quoting *Murray v. Unknown Evert*, 84 F. App'x 553, 556 (6th Cir. 2003)); *Merchant v. Hawk-Sawyer*, 37 F. App'x 143, 145 (6th Cir. 2002) ("Merchant presented no evidence that he was denied basic human needs or was otherwise subjected to cruel and unusual punishment by virtue of the conditions in administrative detention or disciplinary segregation.").  Here, Plaintiffs do not allege that they were denied basic human needs as a result of their classification.

It is also true that prisoners enjoy no constitutional right to vocational training or rehabilitative programs, *Rhodes,* 452 U.S. at 347 (1981), or prison jobs, *Newsom v. Norris,* 888 F.2d 371, 374 (6th Cir. 1989), and that the denial of privileges caused by confinement in segregation does not establish an Eighth Amendment violation.  *See Bradley v. Evans*, No. 98-5861, 2000 U.S. App. LEXIS 28271, at *7 (6th Cir. Aug. 23, 2000).

Finally, to the extent that Plaintiffs argue that their classification violates the Double Jeopardy Clause, the Court disagrees.  The guarantee against double jeopardy protects against a

second prosecution for the same offense after a prior acquittal or conviction and against multiple

punishments for the same offense. *See Witte v. United States*, 515 U.S. 389 (1995); *United*

*States v. DiFrancesco*, 449 U.S. 117, 129 (1980). These protections govern prosecutions and

sentences carried out in state and federal court based on criminal charges. This Court is aware of

no authority, and Plaintiffs cite none, for the proposition that the Double Jeopardy protections

apply to administrative decisions by prison officials to segregate their inmates, or indeed that

these protections apply in any context other than state or federal court proceedings.

For all of these reasons, Plaintiffs have failed to state a claim upon which relief can be

granted with regard to their classification.

## 4.  UNHYGENIC AND INADEQUATE FOOD PREPARATION DEVICES

Plaintiffs further complain that they are denied access to crockpots, hotpots, and

microwaves and that they are in need of such because they:

> use unsanitary water that don't get hot enough to properly cook
> food and kill germs, bacteria, or chemicals used in the packaging
> process to keep foods fresh.  Once seal is broken the food is
> exposed to germs and bacteria in the recycled air of the institution.
> We would at least like to purchase our own crock-pots like the
> prisons do or have access to microwaves at least three times a day
> to properly heat food.

They continue:  "25% of the trays are dirty with built-up calcium . . . and leftover foods from

either breakfast or the day before.  Now 25% of the time the trays are dirty, the hot food is cold

half the time . . . ."

The Court finds that Plaintiffs' lack of access to microwaves, hotpots, or crockpots is not

sufficiently serious to state an Eighth Amendment violation. *See, e.g.*, No. 12-cv-1264, *Gallup v.*

*Schmaeling*, 2013 U.S. Dist. LEXIS 129699 (E.D. Wis. Sept. 10, 2013) (holding that inmates'

lack of access to vending machines, microwaves, and kiosks does not give rise to an Eighth

Amendment claim because these items do not implicate a basic human need); *see also Antonelli v. Crow*, No. 08-261-GFVT, 2012 U.S. Dist. LEXIS 133759 (E.D. Ky. Sept. 19, 2012); *Miska v. Middle River Reg'l Jail*, No. 7:09-cv-00172, 2009 U.S. Dist. LEXIS 56661 (W.D. Va. July 2, 2009); *Schroeder v. Corr. Corp. of Am.*, No. 4:07 CV 3832, 2008 U.S. Dist. LEXIS 9512 (N.D. Ohio Feb. 8, 2008); *Banks v. York*, 515 F. Supp. 2d 89, 106 (D.D.C. 2007).

The Court also finds that Plaintiffs' allegations with regard to cold food and dirty trays fail to describe conditions sufficiently serious to rise to the level of a constitutional violation. *See, e.g.*, *Slone v. Bilbery*, 2014 U.S. Dist. LEXIS 143941, at *8 (M.D. Tenn Oct. 8, 2014) (holding that complaints about the quality or preparation of prison food generally do not amount to an Eighth Amendment violation); *see also Wilkerson v. Champagne*, No. 03-1754 Section "T" (1), 2003 U.S. Dist. LEXIS 21465 (E.D. La. Nov. 26, 2003).

### 5. INSUFFICIENT DIET

Plaintiffs also allege that the meals they are being served on a daily basis "are not fit for fully grown men and women.  It's only enough to keep you alive which is cruel and unusual punishment at its core . . . the portions are small, we get no fruits and some of the stuff they serve is not fit to eat."  Plaintiffs Michael King, Aaron Michael House, Kyle Burgess, Matthew Hooks specifically allege that they have lost a "significant" amount of weight due to the insufficient amount of food they are served.

The Eighth Amendment requires prison officials to provide inmates with a diet that is nutritionally adequate for the maintenance of normal health.  *Clark-Murphy v. Foreback*, 439 F.3d 280, 292 (6th Cir. 2006); *Cunningham v. Jones*, 567 F.2d 653, 656 (6th Cir. 1977). "Food served to inmates need not be appetizing. The Eighth Amendment merely requires . . . that it be

adequate to meet an inmate's essential nutritional needs." *Heinz v. Teschendorf*, No. 05-CV-73470, 2006 U.S. Dist. LEXIS 98030, at *24 (E.D. Mich. Sept. 19, 2006).

Courts have generally held that allegations of weight loss alone fall short of stating an Eighth Amendment claim. *See, e.g.,* W*iseman v. Cate*, No. 1:13-cv-01951-MJS, 2014 U.S. Dist. LEXIS 26373, at *10-11 (E.D. Cal. Feb. 27, 2014) (finding plaintiff's allegations regarding weight loss insufficient to state a claim where medical records attached to complaint showed that although he had lost 23 lbs. over a period of 17 months, his most recent medical progress note indicated that, based upon the Center for Disease Control height and weight charts, plaintiff was not malnourished); *Newell v. Sheriff*, No. 1:11-cv-86, 2014 U.S. Dist. LEXIS 124923, at *18-19 (E.D. Tenn. Sept. 8, 2014) (finding plaintiff had failed to state a claim regarding weight loss due to a deficient diet because plaintiff did not identify his starting or present weight, failed to describe the types of food and portions served, and failed to allege the prison meals were nutritionally insufficient to maintain normal health); *Bick v. Arpaio*, No. CV 06-2230-PHX-MHM (JRI), 2006 U.S. Dist. LEXIS 84789, at *11 (D.C. Ariz. Nov. 16, 2006) (allegations of weight loss alone do not state a claim for inadequate nutrition); *but see Foster v. Runnels*, 554 F.3d 807, 812-13, 813 n.2 (9th Cir. 2009) (holding that a prisoner who was denied 16 meals in 23 days, lost weight, and suffered headaches and dizziness as a result of inadequate nutrition alleged a sufficiently serious deprivation to implicate the Eighth Amendment); *Ward v. Gooch*, No. 5:07-CV-389-JMH, U.S. Dist. LEXIS 118566 (E.D. Ky. Nov. 5, 2010) (inmate stated claim where he alleged he was fed between 200-700 calories a day for almost a year and lost over 60 lbs.)

Based upon the above, the Court concludes that Plaintiffs' allegations do not state an Eighth Amendment claim because they do not indicate that their physical health has been harmed

by HCDC's meal plan.  Plaintiffs also fail to make specific allegations regarding the number of meals served per day, the content of those meals, how much weight they have actually lost, and whether their current weight would still be considered healthy based upon their height.

### 6.  PLAINTIFF ADAMS' ADDITIONAL CLAIMS

#### a.  Food Allergy

Plaintiff Tyrice C. Adams also complains that he notified HCDC medical staff that he is allergic to penicillin but that the kitchen continues to serve him fish every Friday.  As noted above, the Eighth Amendment requires prison officials to provide inmates with a diet that is nutritionally adequate for the maintenance of normal health.  *Clark-Murphy v. Foreback*, 439 F.3d at 292; *Cunningham v. Jones*, 567 F.2d at 656.  Although the Court is unsure of the nature of the relationship between a penicillin allergy and fish, Plaintiff Adams has not alleged he has suffered illness, nutritional deficiencies, or has gone hungry as result of the weekly inclusion of fish in his diet.  Because Plaintiff Adams alleges no injury, the Court finds that he has not stated a claim under the Eighth Amendment.  *See, e.g., Turner v. George*, No. 1:13-cv-0142, 2014 U.S. Dist. LEXIS 1734, at *7 (M.D. Tenn Jan. 7, 2014) (finding no Eighth Amendment violation where plaintiff did not allege that she had suffered nutritional deficiencies or gone hungry even though the kitchen failed to provide her with dairy-free meals); *Cloyd v. Dulin*, No. 3:12-cv-1088, 2012 U.S. Dist. LEXIS 170100, at *9-11 (M.D. Tenn. Nov. 30, 2012) (finding no constitutional violation where prisoner with carrot allergy was repeatedly served carrots because he failed to allege he suffered serious harm).

#### b.  Grievance Procedure

Plaintiff Adams also alleges that he has filed two grievances.  He alleges that in one instance an HCDC official took his grievance and told him that he was a grievance counselor

even though he was not.  He also alleges that he filed a grievance on a second occasion but never received a response.  Courts, however, have repeatedly held that there is no constitutionally protected due process right to an effective grievance procedure.  *See Hewitt v. Helms*, 459 U.S. 460, 467, (1983); *Walker v. Mich. Dep't of Corr.*, 128 F. App'x 441, 445 (6th Cir. 2005); *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003); *Young v. Gundy*, 30 F. App'x 568, 569-70 (6th Cir. 2002); *Carpenter v. Wilkinson*, No. 99-3562, 2000 U.S. App. LEXIS 1915, at *2 (6th Cir. Feb. 7, 2000); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (collecting cases).

    As such, the Court finds that Plaintiff Adams has failed to state a constitutional claim.

### B.  STATE-LAW CLAIM

    Finally, to the extent that Plaintiffs also seek to bring a state-law claim under

K.R.S. § 439.179 for being charged for room and board at HCDC, the Court declines to exercise supplemental jurisdiction over such.  Supplemental jurisdiction is governed by 28 U.S.C. § 1367, which includes an explicit provision permitting the district court to decline to exercise supplemental jurisdiction over a claim when that court has dismissed all claims over which it has original jurisdiction.  *See, e.g.*, *Saglioccolo v. Eagle Ins. Co.*, 112 F.3d 226, 233 (6th Cir. 1997).

## V. CONCLUSION

For the foregoing reasons, Plaintiffs' 42 U.S.C. § 1983 claims will be dismissed by separate Order pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted, and their state-law claim will be dismissed without prejudice pursuant to 28 U.S.C. § 1367(c)(3) because the Court declines to exercise supplemental jurisdiction over such.[4]

Date:   May 12, 2016

**Charles R. Simpson III, Senior Judge**
**United States District Court**

cc: Plaintiffs, *pro se*
    Defendants
    Hardin County Attorney
4411.011

---

[4] The Court also notes that to the extent that some Plaintiffs requested injunctive relief in the form of release from prison, shorter sentences, or release on parole, this is not the type of relief that can be provided in a 42 U.S.C. § 1983 action even if they had stated a claim upon which relief could be granted.  This is the type of relief that can only be granted through a *habeas* action.  Plaintiffs should *individually* contact the Clerk of Court by letter if they would like to receive a 28 U.S.C. § 2241, § 2254, or § 2255 packet, so they can file such an action if they so desire.  Plaintiffs should not reference this civil action in their letters but indicate that they would like to file a new action.